UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| ELLIOTT DEONTA GLASS, ) | |
| ) | Case Nos. 1:16-cr-40; 1:17-cv-320 |
| *Petitioner* ) | |
| ) | Judge Mattice |
| v. ) | |
| ) | Magistrate Judge Lee |
| UNITED STATES, ) | |
| ) | |
| *Respondent* ) | |

## MEMORANDUM OPINION

Before the Court is the Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 filed by federal inmate Elliott Glass [Case No. 1:16-cr-40, Crim. Doc. 32; Case No. 1:17-cv-320, Doc. 1]. As ordered, the Government has filed a response to the Motion. [Doc. 8]. Glass subsequently filed a supplement, a declaration under penalty of perjury, and a second memorandum in support of his motion. [Docs. 11, 12 & 14]. The Court therefore ordered the Government to file another response, which it did. [Doc. 18]. Since that time, Glass has filed a Motion for Default Judgment [Doc. 19], a Motion for Subpoenas [Doc. 24], a Motion to Amend [Doc. 25], and a Motion Requesting Intervention of Chief Judge [Doc. 26]. Having considered the pleadings and the record, along with the relevant law, the Court finds there is no need for an evidentiary hearing[1] and Petitioner's § 2255 motion will be **DENIED**. His remaining motions will also be denied.

---

[1] An evidentiary hearing is required on a § 2255 motion unless the motion, files, and record conclusively show that the prisoner is not entitled to relief. *See* 28 U.S.C. § 2255(b). It is the prisoner's ultimate burden, however, to sustain his claims by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Accordingly, where "the record conclusively shows that the petitioner is entitled to no relief," a hearing is not required. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted).

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

On April 19, 2016, a grand jury charged that on or about March 18, 2016, Elliott Glass possessed with intent to distribute 50 grams or more of actual methamphetamine and 500 grams or more of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). [Crim. Doc. 9]. Glass pleaded guilty pursuant to a written plea agreement. [Crim. Doc. 16]. The plea agreement recited that he "face[d] a mandatory minimum sentence of 10 years' imprisonment and a maximum sentence of life imprisonment." [*Id.* at 1]. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agreed that a sentence of 188 months' imprisonment and a 5-year term of supervised release was an appropriate disposition of the case. [*Id.* at 3].

In the plea agreement, Petitioner agreed not to file any motions pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack his conviction or sentence, with two exceptions: he retained the right to file a § 2255 motion as to ineffective assistance of counsel and prosecutorial misconduct. [*Id.* at 6]. He also waived his right to appeal, without exception. [*Id.*].

The Court's Probation Office prepared a Presentence Investigation Report which detailed the offense conduct. [Crim. Doc. 25]. According to the PSR, a confidential informant arranged to purchase 6 kilograms of methamphetamine from Petitioner. [*Id.* at ¶ 6]. Petitioner arrived to deliver the methamphetamine as arranged, and fled when law enforcement moved to arrest him, dropping a suitcase that contained 6 kilograms of methamphetamine. [*Id.* at ¶¶7, 9]. The confidential informant stated that Glass had previously delivered 10 kilograms of methamphetamine to her. [*Id.* at ¶ 10].

Accordingly, the PSR calculated Petitioner's "base offense level [as] 36 for the possession with intent to distribute 16 kilograms of methamphetamine mixture." [Crim.

Doc. 25 at ¶ 15]. Minus three points for acceptance of responsibility, Petitioner's total offense level was 33. [*Id.* at ¶ 24]. With an offense level of 33 and a category five criminal history, Petitioner's guideline imprisonment range was 210 to 262 months. [*Id.* at ¶ 53]. Pursuant to 21 U.S.C. § 841(a)(1) and (b)(1)(A), Petitioner was subject to a mandatory minimum sentence of ten years' imprisonment. [*Id.* at ¶ 52].

Neither party objected to the PSR and the Court accepted it without change. [Crim. Doc. 38; Crim. Doc. 30]. The Court also accepted Petitioner's Rule 11(c)(1)(C) plea agreement. [*Id.*]. On November 7, 2016, Petitioner was sentenced to 188 months' imprisonment followed by 5 years of supervised release. [Crim. Doc. 29].

Petitioner did not appeal. On November 14, 2017, he filed a timely Motion to Vacate. Petitioner raises a single basis for relief—that his counsel was ineffective for failing to object to the drug quantity attributed to him in the PSR. Petitioner contends he should only have been held responsible for the 6 kilograms of methamphetamine he had when arrested, not the additional 10 kilograms that the confidential informant stated she received from him previously.

## II. LEGAL STANDARDS

After a defendant has been convicted and exhausted his appeal rights, a court may presume that "he stands fairly and finally convicted." *United States v. Frady*, 456 U.S. 152, 164 (1982). A court may grant relief under 28 U.S.C. § 2255, but the statute "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, collateral attack limits a movant's allegations to those of constitutional or jurisdictional magnitude, or those containing factual or legal errors "so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation omitted); *see also* 28 U.S.C. § 2255(a).

3

### III. ANALYSIS

#### A. Ineffective Assistance of Counsel

To establish that he has received ineffective assistance of counsel, a convicted defendant must satisfy the two-pronged test set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* holds that a petitioner cannot establish his counsel was ineffective unless he demonstrates that (1) counsel's performance was deficient, such that counsel did not render reasonably effective assistance as measured by prevailing professional norms; and (2) he was prejudiced by the deficiency, *i.e.*, there is a reasonable probability that but for counsel's alleged acts or omissions, the results of the proceedings would have been different. *Id.* at 687-88, 694; *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013) (applying *Strickland* test to § 2255 claims). The failure to satisfy either prong of *Strickland* requires dismissal of the claim and relieves the reviewing court of a duty to consider the other prong. *Nichols v. United States*, 563 F.3d 240, 249 (6th Cir. 2009); *see also Strickland*, 466 U.S. at 697. Finally, *Strickland* "requires the defendant to identify specific acts or omissions by counsel that were 'outside the wide range of professionally competent assistance.'" *Carter v. Bogan*, 900 F.3d 754 (6th Cir. 2018) (*quoting Strickland*, 466 U.S. at 690).

Petitioner claims his counsel was ineffective for failing to object to 10 of the 16 kilograms of methamphetamine for which he was held responsible at sentencing. He alleges that had he known he would be held responsible for this quantity, he would not have pleaded guilty, but would have gone to trial.[2] He further complains that none of the drugs recovered were lab-tested. [Doc. 2 at 8]. He also argues his counsel should not have

---

[2] Petitioner also argues the PSR failed to identify the source of certain drugs "seized from the CI" and so Petitioner should not have been held accountable for those quantities "except for sentencing purposes." [Doc. 2 at 4]. The record reflects that is how the drug quantities were in fact considered.

4

advised him to enter a Rule 11(c)(1)(C) agreement with a 188-month sentence when the mandatory minimum sentence was only 120 months.

Petitioner's claim fails because he cannot show either deficient performance or prejudice. In the ordinary course, a defendant enters a guilty plea and the Court decides whether to accept the plea. If the plea is accepted, the Court separately determines an appropriate sentence after consideration of, *inter alia*, the defendant's criminal history, relevant conduct, and the advisory sentencing guidelines that aim to quantify these considerations. At sentencing, the defendant has already entered a guilty plea, so counsel has every reason to object to calculations in the PSR that might increase the defendant's sentencing exposure.

But here, Petitioner entered a Rule 11(c)(1)(C) plea agreement, agreeing both to plead guilty and to a 188-month sentence. Federal Rule of Criminal Procedure Rule 11(c)(1)(C) provides that the Government and a defendant may "agree that a specific sentence or sentencing range is the appropriate disposition of the case." Fed. R. Crim. Proc. 11(c)(1)(C). Once the plea is accepted, the recommended sentence binds the Court; that is, the Court cannot accept a Rule 11(c)(1)(C) plea without also accepting the recommended term of imprisonment. Indeed, Petitioner's plea agreement provides: "In the event the Court declines to accept this agreement, either party will be free to withdraw from the plea agreement." [Crim. Doc. 16 at 4]. Glass was asked at sentencing if he believed the plea was in his best interest and agreed it was. [Crim. Doc. 38 at 10].[3] Under

---

[3] Contrary to the Government's suggestion, Glass did not make a solemn declaration in open court that he had no objections to the PSR. [*See* Doc. 8 at 6]. The United States claims Glass "admitted he reviewed the PSR and when giving [sic] the opportunity to assert any objections to the drug quantity set forth therein he declined to do so." [*Id.*]. This is not exactly correct. Glass's counsel stated there were no objections and it is this conduct that Glass challenges as ineffective.

5

these circumstances, counsel was not ineffective for failing to object to the drug quantity in the PSR.

Moreover, there is no reason to believe such an objection would have been fruitful. Petitioner complains that the drugs seized were not lab tested and that the only evidence of the 10-kilogram delivery was the statement of the confidential informant. But he does not actually deny providing the informant with 10 kilograms of methamphetamine in an earlier delivery, nor does he allege any reason to disbelieve her statement. As the Government points out, lab tests do not always cut in a defendant's favor, as a higher substance purity level can support a higher sentencing range. In short, Petitioner presents no reason why his counsel should have challenged the drug quantities in his case.

Petitioner's ineffective assistance claim also fails because he cannot show prejudice. "In order to show that deficient performance prejudiced the defense when a defendant pleads guilty, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Stewart v. Morgan*, 232 F. App'x 482, 487 (6th Cir. 2007). "A defendant can meet this burden by showing, for example, that there was an affirmative defense… that likely would have succeeded at trial, or by showing that he or she was not competent to plead guilty." *Id.* (cleaned up). Critically, "[a] defendant's bare recitation that he would have proceeded to trial had he received different advice is not enough." *Ellis v. United States*, No. 19-6047, 2020 WL 1272625 (6th Cir. Jan. 30, 2020). Instead, "to obtain relief on this type of claim, a [defendant] must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Id.* (*quoting Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

Petitioner contends that despite receiving the sentence to which he stipulated, he would not have pleaded guilty had he known the drug quantity that would be attributed to him in the PSR. Petitioner's contention is implausible. This is not a situation where a subsequent enhancement or classification altered the defendant's sentencing expectations. On the contrary, Petitioner received the sentence he requested via the plea agreement. Recall, too, that his advisory sentencing range was 210 to 262 months' imprisonment if convicted. [Crim. Doc. 25 at ¶ 53]. Even removing the additional 10 kilograms of methamphetamine mixture from his guidelines calculation for plea purposes, his advisory imprisonment range would have been 168 to 210 months' imprisonment, making his sentence squarely within the guidelines. *See* United States Sentencing Guidelines Manual, Sentencing Table; U.S.S.G. § 2D1.1(c)(3). Had he gone to trial—losing credit for acceptance of responsibility—his sentencing exposure would have been 235 to 293 months just for the 6 kilograms of methamphetamine he admits to possessing.

Under these circumstances, Petitioner cannot show that rejection of the plea agreement would have been rational. Nor has he shown prejudice by, for example, raising a meritorious defense. In fact, he does not actually deny delivering the 10 kilograms of methamphetamine for which he was held responsible at sentencing. Petitioner has not demonstrated that his counsel's purportedly ineffective assistance prejudiced him and he is not entitled to relief.

### B.  Other Legal Theories

Petitioner filed a number of other documents in which he references, with little or no explanation, various legal theories and purported bases for relief. In his Declaration [Doc. 11], he avers, *inter alia*, that counsel failed to disclose the plea agreement in open

court, that some aspect of his plea or representation was "[f]ounded on a breach of confidentiality," and that he pleaded guilty to a charge that was "unconstitutionally vague and failed to provide fair warning." [*Id.* at 1-2]. In a Supplement [Doc. 12] that is in fact another motion to vacate, he claims ineffective assistance of counsel, lack of jurisdiction, and that his sentence is otherwise subject to collateral attack. He also says his sentence was in excess of the maximum authorized by law. [*Id.*].

Petitioner bears the burden of establishing an error of constitutional magnitude which had a substantial or injurious effect on the criminal proceedings, *Reed v. Farley*, 512 U.S. 339, 353 (1994), and even a *pro se* prisoner must state his claims with some degree of specificity. Here, Petitioner makes passing reference to various legal theories without argument or explanation. He makes no attempt to connect the law he references to any aspect of his case. To the extent the Court can discern the nature of Petitioner's challenges, they are not meritorious.

## IV.    MISCELLANEOUS MOTIONS

Petitioner has filed a number of other motions and documents, all of which will be denied. First, Petitioner seeks leave to amend his Motion to Vacate because his family has obtained the "services of a legal provider," though he maintains his *pro se* status. [Doc. 25]. He does not propose any substantive amendment to his motion. Petitioner has already filed a motion [Doc. 1], memorandum [Doc. 2], and supplement [Doc. 5], to which the Government responded. With the benefit of the Government's responsive arguments [Doc. 8], he filed another supplement [Doc. 12], memorandum [Doc. 14], and declaration [Doc. 11], to which the Government also responded [Doc. 17]. Petitioner had ample opportunity to present his arguments to the Court and has not shown good cause for further amendment. The Motion to Amend [Doc. 25] will therefore be **DENIED**.

Petitioner also filed a Motion for Default Judgment [Doc. 19], arguing the Government did not timely reply to his Motion to Vacate. The record reflects that the Government's response to Petitioner's second round of filings was filed one day late. However, default judgment is generally not available in habeas corpus cases, even where a respondent fails entirely to respond to a § 2255 petition. *Wright v. United States*, No. 3:19-cv-00808, 2020 WL 1676925, *2 (M.D. Tenn. April 6, 2020); *Alder v. Burt*, 240 F. Supp. 2d 651, 677 (E.D. Mich. 2003) (collecting cases); *see also United States v. Bawgus*, 782 F. App'x 408, 410 (6th Cir. 2019) ("[W]hether the government appropriately responded to [the Court's] order does not discharge [Petitioner's] burden to prove entitlement to habeas relief."). The Government had already responded to Petitioner's initial motion, its second response was only one day late, and Petitioner's claims lack merit. In light of these factors and the strong preference for decisions on the merits, the Motion for Default Judgment [Doc. 19] will be **DENIED**.

Next, Petitioner's Motion for Three Issued Subpoenas [Doc. 24] does not attach subpoenas or identify recipients for the subpoenas. There being no factual disputes material to the resolution of this proceeding, the Motion [Doc. 24] will be **DENIED**. Finally, Petitioner's Motion Requesting Intervention of Chief Judge [Doc. 26] will be **DENIED AS MOOT**.

## IV. CERTIFICATE OF APPEALABILITY

When considering a § 2255 motion, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts. Petitioner must obtain a COA before he may appeal the denial of his § 2255 motion. 28 U.S.C. § 2253(c)(1)(B). A COA will issue "only if the applicant has made a substantial showing of

9

the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For cases rejected on their merits, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to warrant a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a movant must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Based on the *Slack* criteria, the Court finds that a COA should not issue in this cause.

## V. CONCLUSION

For the reasons stated herein, Petitioner has failed to establish any basis upon which § 2255 relief could be granted, and his § 2255 motion [Case No. 1:16-cr-40, Crim. Doc. 32; Case No. 1:17-cv-320, Doc. 1] will be **DENIED**.

Petitioner's Motion for Default Judgment [Doc. 19], Motion for Three Issued Subpoenas [Doc. 24], and Motion to Amend [Doc. 25] will be **DENIED**. Petitioner's Motion Requesting Intervention of Chief Judge Upon Defendant's Case [Doc. 26] will be **DENIED AS MOOT**.

A certificate of appealability from the denial of his § 2255 motion will be **DENIED**. A separate judgment will enter.

**SO ORDERED** this 21st day of September, 2020.

                                             */s/ Harry S. Mattice, Jr.*
                                              HARRY S. MATTICE, JR.
                                      UNITED STATES DISTRICT JUDGE